UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATIENT CARE ASSOCIATES LLC, a/s/o B.C., A.R., and K.W., | : | Civil Action No. 13-CV 1480 (WJM) (MF) |
| | : | |
| Plaintiff, | : | |
| | : | **Oral Argument Requested** |
| v. | : | |
| | : | |
| NESTLÉ; ABC CORP. (1-10) (said names being fictitious and unknown entities) | : | **Motion Date:  Monday, May 6, 2013** |
| | : | |
| Defendant. | : | |

---

## BRIEF ON BEHALF OF DEFENDANT
## NESTLÉ WATERS NORTH AMERICA INC.
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

---

ORLOFF, LOWENBACH, STIFELMAN
  & SIEGEL, P.A.
101 Eisenhower Parkway - Suite 400
Roseland, New Jersey  07068-1097
(973) 622-6200
Attorneys for Defendant
Nestlé Waters North America Inc.

Of Counsel:
Jeffrey M. Garrod

On the Brief:
Jeffrey M. Garrod
Samuel Feldman

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

RELEVANT ALLEGATIONS OF COMPLAINT ............................................. 4

LEGAL ARGUMENT ........................................................................................ 6

POINT I .............................................................................................................. 6

PCA HAS FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH
STANDING TO ASSERT CLAIMS AS AN ASSIGNEE OF NWNA'S
PLAN BENEFICIARIES .............................................................................. 6

    A.   PCA Has Failed To Allege Facts Sufficient to Establish a Complete
        Assignment of Benefits In Order To Establish Statutory Standing
        Under ERISA ..................................................................................... 9

    B.   PCA Has Failed To Plead Sufficient Factual Matter To State A
        Claim For Relief That Is Plausible On Its Face ....................................... 13

POINT II ............................................................................................................ 14

PCA'S STATE LAW CLAIM FOR NEGLIGENT MISREPRESENTATION
(THIRD COUNT) IS PREEMPTED AND MUST BE DISMISSED ............... 14

POINT III ........................................................................................................... 18

THE COURT SHOULD DISMISS THE SECOND COUNT FOR
FAILURE TO STATE A CLAIM FOR BREACH OF FIDUCIARY
DUTY .......................................................................................................... 18

    A.   The Complaint Does Not Set Forth The Elements Of A
        Breach Of Fiduciary Duty Claim ........................................................... 18

    B.   Plaintiff Does Not Plead Sufficient Facts To Meet The
        Requirements of Fed. R. Civ. P. 8(a) ...................................................... 19

C.  ERISA Does Not Provide A Monetary Remedy For
    Procedural Violations................................................................... 19

POINT IV ............................................................................................ 21

BECAUSE PCA HAS FAILED TO SUFFICIENTLY PLEAD
EXHAUSTION OF ADMINISTRATIVE REMEDIES, ALL ERISA
COUNTS SHOULD BE DISMISSED ............................................... 21

A.  Exhaustion Is A Requirement For PCA's ERISA Claims....................... 21

POINT V .............................................................................................. 23

PCA'S CLAIM FOR NEGLIGENT MISREPRESENTATION
(THIRD COUNT) FAILS TO STATE A CLAIM BY REASON OF
THE ECONOMIC LOSS DOCTRINE............................................... 23

POINT VI ............................................................................................ 24

THE FOURTH COUNT AGAINST FICTITIOUS CORPORATIONS
SHOULD BE DISMISSED .............................................................. 24

POINT VII............................................................................................ 25

PCA'S JURY DEMAND SHOULD BE STRICKEN........................................ 25

CONCLUSION ..................................................................................... 26

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Aarom v. Bd. Of Trustees of the Pepco Holdings, Inc. Retirement Plan,
   814 F.Supp. 2d 466 (D.N.J. 2011)......................................................... 16

Abnathya v. Hoffmann-LaRoche, Inc.,
   2 F.3d 40 (3d Cir. 1993) ...................................................................... 13

Advanced Rehabilitation v. United Healthcare,
   2011 U.S. Dist. LEXIS 27710 (D.N.J. Mar. 17, 2011),
   aff'd. 2012 U.S. App. LEXIS 20050 (3d Cir. Sept. 25, 2012)............................ 14

Aetna Health Ins. v. Davila,
   542 U.S. 200 (2004).................................................................... 15, 16

Aruanno v. Walsh,
   2011 WL 2294193 (D.N.J. June 8, 2011),
   aff'd, 2011 WL 3796737 (3d Cir. Aug. 29, 2011) ................................. 8

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S.Ct. 1937 (2009) ......................................... *passim*

Ashenbaugh v. Crucible 1975 Salaried Ret. P.,
   854 F.2d 1516 (3d Cir. 1988) ............................................................. 20

Baraka v. McGreevey,
   481 F.3d 187 (3d Cir.), *cert.* den., 552 U.S. 1021 (2007) ...................................... 7

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)................................................................... 6, 7, 11

Berger v. Edgewater Steel Co.,
   911 F.2d 911 (3d Cir. 1990) ............................................................... 21

Bicknell v. Lockhead Martin Grp. Benefits Plan,
   410 Fed. Appx. 570 (3d Cir. 2011)....................................................... 16

Chapman v. Choice Care Long Island Disability Plan,
   288 F.3d 506 (2d Cir. 2002) ................................................................ 21

CJS Corporate Center, LLC v. Merrill Lynch Mortg. Lending, Inc.,
　　2010 WL 3075694 (App. Div. 2010) ................................................................ 24

Cooper Hospital Univ. Med. Ctr. v. Seafarers Health and Benefits Plan,
　　2007 U.S. Dist. LEXIS 71358 (D.N.J. Sept. 25, 2007)........................................ 11

Cox v. Keystone Carbon Co.,
　　894 F.2d 647 (3d Cir. 1988) ............................................................................ 25

Ctr. for Special Procedures v. Conn General Life Ins. Co.,
　　2010 U.S. Dist. LEXIS 128289 (D.N.J.) ............................................................ 23

D'Amico v. CBS Corp.,
　　297 F.2d 287 (3d Cir. 2002) ............................................................................ 21

Demaria v. Horizon Healthcare Services, Inc.,
　　2012 WL 5472116 (D.N.J. Nov. 9, 2012) ............................................. 9, 10, 12, 13

Flinders v. Workforce Stabilization Plan of Phillip Petroleum Co.,
　　491 F.3d 1180 (10th Cir. 2007),
　　abrogated in part on other grounds by
　　Metro Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008).................................... 13, 20

Franco v. Connecticut General Life Ins. Co.,
　　818 F.Supp.2d 792 (D.N.J. 2011)........................................................... 10, 11, 12

Goldenberg v. Indel, Inc.,
　　741 F.Supp.2d 618 (D.N.J. 2010).......................................................................... 8

In Re Burlington Coat Factory Sec. Litig.,
　　114 F.3d 1410 (3d Cir. 1997) .................................................................. 4, 14, 20, 22

Kelso v. General American Life Ins. Co.,
　　967 F.2d 388, 390-91 (10th Cir. 1992)................................................................ 17

Kennedy v. Empire Blue Cross & Blue Shield,
　　989 F.2d 588 (2d Cir. 1993) ............................................................................ 21

Killian v. Johnson & Johnson,
　　No. 07-4902, 2008 WL 320533 (D.N.J. Jan. 29, 2008) ........................................ 25

Metropolitan Life Ins. Co. v. Price,
　　501 F.3d 271 (3d Cir. 2007) ............................................................................ 22

Miller v. Rite Aid Corp.,
   334 F.3d 335 (3d Cir. 2003) ........................................................... 9

Montvale Surgical Center LLC a/s/o Gerald Tyska
v. Coventry Health Care, et al.,
   Case No. 2:12-cv-06916-JLL-MAH (Slip op. D.N.J. Mar. 18, 2013) ................. 3

Pane v. RCA Corporation,
   868 F.2d 631 (3rd Cir. 1989) ......................................................... 25

Pascack Valley Hosp. Inc. v. Local 464A VFCW Welfare Reimbursement Plan,
   388 F.3d 393 (3d Cir. 2004) ........................................................... 9

Pilot Life Ins. Co. v. Dedeaux,
   481 U.S. 41 (1987)........................................................... 15, 16, 17

Pryzbowski v. U.S. Healthcare,
   245 F.3d 266 (3d Cir. 2001) ....................................................... 15, 17

Saltiel v. GSI Consultants, Inc.,
   170 N.J. 297 A.2d 268 (2002) ......................................................... 24

Shinn v. Champion Mortgage Co., Inc.,
   2010 WL 500410 (D.N.J. 2010)........................................................ 23

Shook v. Avaya, Inc.,
   625 F.3d 69 (3d Cir. 2010) .......................................................... 18

Syed v. Hercules Inc.,
   214 F.3d 155 (3d Cir. 2000) ......................................................... 20

Synder v. Farnam Companies, Inc.,
   792 F.Supp.2d 712 (D.N.J. 2011)...................................................... 22

Turner v. CF&I Steel Corp.,
   770 F.2d 43 (3rd Cir. 1985)......................................................... 25

Weldon v. Kraft, Inc.,
   896 F.2d 793 (3d Cir. 1990) ......................................................... 21

## **STATUTES**

29 U.S.C. §1001, et seq. .................................................................................. 1

29 U.S.C. §1101, et seq. .................................................................................. 1

29 U.S.C. §1102(8), et seq. ............................................................................. 4

29 U.S.C. §1132(a) .......................................................................................... 14

29 U.S.C. §1132(a)(1)(B) .............................................................................. 1, 5

29 U.S.C. §1132(e)(1) ..................................................................................... 9

29 U.S.C. §1132(g)(1) ..................................................................................... 3

29 U.S.C. §1144 ............................................................................................... 16

29 U.S.C. §1144(a).................................................................................. 15, 16, 17

## **RULES**

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 8

Fed. R. Civ. P. 39(a)(2) ................................................................................... 25

## PRELIMINARY STATEMENT

Defendant Nestlé Waters North America Inc. ("NWNA") submits this brief in support of its motion to dismiss the complaint filed by plaintiff Patient Care Associates, LLC ("PCA" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).

This is an ERISA[1] case for payment of medical benefits. PCA is an "out of network" ambulatory surgery center that is suing NWNA for benefits which three (3) participants in an ERISA-governed health care insurance plan ("NWNA Medical Plan" or "Plan") are allegedly entitled to pursuant to the provisions of the Plan. PCA alleges that it has received an assignment of benefits from each participant.

PCA attempts to plead four causes of action. The First Count is a claim by PCA for benefits as the alleged assignee of B.C., A.R. and K.W., Plan participants, or subscribers as referred to by PCA, pursuant to ERISA, 29 U.S.C. §1101 et seq. (Compl. ¶21). The First Count asserts a legal conclusion that the assignments from B.C., A.R. and K.W. confer upon PCA the status of a beneficiary of the Plan, which gives PCA standing to sue pursuant to §502(a) of ERISA, 29 U.S.C. §1132(a)(1)(B). (Compl. ¶27).

The Second Count is titled a claim for breach of fiduciary duty under ERISA and seeks payment of the same benefits as alleged in the First Count. PCA

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq.

alleges that NWNA failed to sufficiently explain its determination of B.C., A.R. and K.W.'s claims for Plan benefits.  (Compl., ¶39).  Only monetary relief is sought in the Second Count.

The Third Count asserts a common law claim for negligent misrepresentation seeking the same Plan benefits as the First Count.

The Fourth Count asserts a claim against fictitious and unknown corporate entities, allegedly also responsible for the payment of Plan benefits sought by PCA in the First through Third Counts.

There are several reasons justifying the dismissal of PCA's complaint. First and foremost, PCA lacks standing to bring ERISA-based claims because it is neither a participant nor a beneficiary of the NWNA Medical Plans and the assignments given to it by the three Plan participants do not, as the law requires, conclusively establish a complete assignment of all of the participant's legal rights to benefits under the NWNA Medical Plans.  Because the assignments are insufficient, PCA lacks standing to bring a lawsuit pursuant to §502(a) of ERISA.

Second, even if the assignments are legally adequate, the Second Count, styled as an ERISA breach of fiduciary duty claim, should be dismissed for failure to plead the elements of an ERISA breach of fiduciary duty claim and because it seeks remedies that are not available under ERISA.

Third, the Third Count (negligent misrepresentation) should be

dismissed because it is preempted by ERISA and otherwise barred by the Economic Loss Doctrine.

Fourth, PCA's ERISA-based claims should be dismissed for its failure to adequately plead that each participant exhausted his or her administrative remedies under the Plan.

Fifth, the Fourth Count is brought against fictitious entities and should be dismissed for the same reasons as the First, Second and Third Counts.

Finally, plaintiff PCA's jury demand should be struck.

NWNA reserves its right to seek counsel fees from PCA pursuant to 29 U.S.C. §1132(g)(1). PCA's complaint against NWNA is frivolous and is one of approximately twenty (20) lawsuits PCA has filed against different ERISA plans and defendants, making the same baseless and conclusionary allegations without pleading any facts, often repeating the same typos from complaint to complaint. Counsel for plaintiff has apparently made a career of filing these ERISA collection complaints on behalf of different surgical centers. A complaint which plaintiff's counsel filed in a lawsuit captioned Montvale Surgical Center LLC a/s/o Gerald Tyska v. Coventry Health Care et al, Case 2:12-cv-06916 - JLL-MAH (Docket 1-2), which is almost identical to the complaint in this action, was recently dismissed in its entirety on a motion to dismiss. See Opinion dated March 18, 2013 of Jose L. Linares, U.S.D.J., Id. at Document 15. (Copy of Opinion annexed hereto as

Exh. "A").

## **RELEVANT ALLEGATIONS OF COMPLAINT**[2]

PCA is an out of network ambulatory surgery center that provided various surgical services to B.C., A.R. and K.W., subscribers (participants), enrolled in the health care plans of NWNA (Compl. ¶1).  The surgical services are not described or identified in the complaint.

NWNA maintains a self-funded health insurance plan (the "Plan") for its employees and their participating family members (Compl. ¶4).

Under the Plan, NWNA provided certain members and their dependents with out of network benefits.  (Compl. ¶9).

PCA provided doctors and an ambulatory surgery center for certain unidentified medical procedures administered to three subscribers of the Plan, identified only as "B.C.", "A.R." and "K.W." (Compl. ¶10).

PCA obtained "written Assignments of Benefits" (the "Assignments") from B.C., A.R. and K.W. (Compl. ¶8).  These Assignments allegedly transferred to PCA the "contractual and legal rights" of B.C., A.R. and K.W. under NWNA's Medical Plan.  (Compl. ¶8).  The complaint states in conclusory fashion that the Assignments of Benefits confer upon PCA the status of beneficiary under §502(a)

---

[2] The allegations in the complaint are taken as true for purposes of this motion only.  In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  NWNA does not agree with the accuracy of certain allegations.

of ERISA, 29 U.S.C. §1132 (a)(1)(B) and §1102(8) et seq.  (Compl. ¶¶13-15).  The actual assignment language is neither quoted nor attached as an exhibit to the complaint, and no facts are pled to support these totally speculative legal conclusions.

In the First Count seeking benefits under the NWNA Medical Plan pursuant to §502(a) of ERISA, 29 U.S.C. §1132 (a)(1)(B), PCA alleges in conclusory fashion that it received an "assignment of benefits from B.C., A.R. and K.W., which had 'out of network' benefits for surgery under their plan…" which assigned to PCA "their right to receive payment directly from [NWNA] for the services that B.C., A.R., and K.W. received from Plaintiff." (Compl. ¶26).

PCA submitted bills to NWNA for services rendered to B.C., A.R. and K.W. and in each case, NWNA issued an Explanation of Benefits and paid PCA less than the amount that PCA claims should have been paid pursuant to the NWNA Medical Plan.  PCA challenges the reasonable and customary charge allowed and paid by the Plan for these unidentified and undisclosed medical procedures.  (Compl. ¶¶13-15).

PCA "submitted appeals for reconsideration of the claim and for further payment." (Compl. ¶17).  The complaint does not identify the "claim." There are no facts pled that would provide any notification of which "claim" was appealed or when, to whom or what was appealed.  Claim denials and appeals are

expressly addressed in the Plan in a clearly labeled section.  See Declaration of

Dana Loch.  However, no facts are alleged which support that any of the three

participants filed appeals in accordance with the Plan provisions thereby

exhausting their administrative remedies.

According to the complaint, NWNA did not properly consider

payment on appeal as it failed to provide an appropriate response to the "appeal"

because (i) it failed to provide a copy of the Summary Plan Description to PCA in

a timely manner; (ii) failed to provide a detailed explanation as to how it

determined the approved amount for payment; (iii) failed to properly process the

claims for payment; and (iv) failed to properly advise PCA about the appeal

process (Compl. ¶17).  No facts appear in the complaint to support any of these

conclusions.

PCA is claiming damages in the sum of $114,484.70 (Compl. ¶16).

## LEGAL ARGUMENT

### POINT I

### PCA HAS FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH STANDING TO ASSERT CLAIMS AS AN ASSIGNEE OF NWNA'S PLAN BENEFICIARIES

Fed. R. Civ. P. 8 (a)(2) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief, in order to give the defendant

fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In Twombly, the United States

Supreme Court emphasized that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Id. at 558.   The Supreme Court reasoned that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Id. at 555.   Instead, the plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level...." Id.

Two years later, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 1953 (2009), the Supreme Court clarified that Twombly "expounded the pleading standard for all civil actions":

> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."** [Twombly, 555 U.S.] at 570, 127 S.Ct. 1955.   **A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.** Id. at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557. [Emphasis supplied].

Under this jurisprudence, this Court should not "accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." Baraka v. McGreevey, 481 F.3d 187, 211 (3d Cir.), cert. den., 552

U.S. 1021 (2007).  "Naked assertions devoid of further factual enhancements" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to preclude dismissal under Fed. R. Civ. P. 12(b)(6).  Iqbal, 129 S.Ct. at 1949.  Moreover, when the complaint relies upon or refers to documents which contradict plaintiffs' factual allegations, it is the documents -- not the allegations -- which control.  Goldenberg v. Indel, Inc., 741 F.Supp.2d 618, 624 (D.N.J. 2010) (citing ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994)).

This Court has recognized that district courts must conduct a three-step analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the Iqbal pleading regime, a court must take three steps:  First, the court must "take note of the elements a plaintiff must plead to state a claim."  Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Aruanno v. Walsh, 2011 WL 2294193 at *4 (D.N.J. June 8, 2011), aff'd, 2011 WL 3796737 (3d Cir. Aug. 29, 2011) (quoting Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010)).  When measured against this analysis, it is clear that plaintiff's complaint does not pass muster under the Iqbal plausibility pleading requirement.

**A. PCA Has Failed To Allege Facts Sufficient to Establish
a Complete Assignment of Benefits In Order To Establish
Statutory Standing Under ERISA**

To proceed with its claims under ERISA, PCA must demonstrate

ERISA standing as a "participant" or "beneficiary."[3]  However, PCA is neither a

participant nor a beneficiary in NWNA's Plan and thus, has no independent

standing to assert claims under ERISA.  Pascack Valley Hosp. Inc. v. Local 464A

VFCW Welfare Reimbursement Plan, 388 F.3d 393, 399-400 (3d Cir. 2004).

PCA's naked assertion of a legal conclusion that it is the assignee of three Plan

participants does not pass muster to demonstrate that it has statutory standing to

bring its ERISA claims against NWNA.  This Court recently dismissed a complaint

which failed to supply sufficient factual allegations to allow the Court to determine

whether an assignment to a provider was a complete assignment of the

participant's rights under ERISA, necessary to satisfy the standing requirement.[4]

In Demaria v. Horizon Healthcare Services, Inc., 2012 WL 5472116

---

[3] Section 502(e)(1) of ERISA expressly invests federal courts with jurisdiction
over ERISA actions only if such actions are commenced by those parties
enumerated in Section 502, namely (1) the Secretary of Labor, (2) participants; (3)
beneficiaries and fiduciaries.  29 U.S.C. §1132(e)(1).  "The requirement that the
plaintiff be a plan participant is both a standing and subject matter jurisdictional
requirement."  Miller v. Rite Aid Corp., 334 F.3d 335, 340-341 (3d Cir. 2003).
[4] As noted by the Court in Pascack Valley Hosp., 388 F.3d at 400-401, the Third
Circuit Court of Appeals has not resolved the question of whether a provider such
as PCA can obtain standing under §502(a) by virtue of an assignment of a claim
from a participant or beneficiary.  That question has still not been resolved by the
Third Circuit.

-9-

(D.N.J. Nov. 9, 2012), this Court's analysis started with the principle of law that when a plaintiff's standing is challenged on a motion to dismiss, it is the plaintiff's burden to establish that it has the right to sue. Id. at *2. In noting that the "scope of the assignment of benefits is critical to determining whether a provider has standing to sue under ERISA," Id. at *3, the Court stated that the complaint must contain "specific factual allegations to render plausible their claim that the Assignment they received from the Plan Participants conferred them with the right to receive the full benefits of the Plan, Id. at *4. Vague references or mere conclusions as to the scope or legal effect of an assignment to a medical provider is nothing more than an unsupported legal conclusion that fails to satisfy the Iqbal standard that requires pleading sufficient factual matter to state a claim for relief that is plausible on its face. Id. at *4. Actual assignment language or including the actual assignment as an exhibit to the complaint are minimal pleading requirements to support a "legal conclusion that a valid assignment of the proper breadth was given by patients. Id. [citing to Franco v. Connecticut General Life Ins. Co., 818 F.Supp.2d 792 (D.N.J. 2011)]." Demaria at *4.

    In reaching its conclusion that the assignment before it was not adequately pled, this Court relied on Franco which held that to satisfy the applicable pleading requirements to obtain standing by assignment under ERISA, "the assignment must encompass the patient's legal claim to benefits under the

plan." Franco, 818 F.Supp.2d at 808.  The Franco Court drew a distinction between a "complete assignment of benefits" sufficient to vest the provider with standing under ERISA" and "the more limited assignment of a right to receive reimbursement from an insurer," which is insufficient to support standing.  Id. at 809.  See, e.g., Cooper Hospital Univ. Med. Ctr. v. Seafarers Health and Benefits Plan, 2007 U.S. Dist. LEXIS 71358 (D.N.J. Sept. 25, 2007) (assignment of right to receive direct payment did not support the "unequivocal assignment of all [the patient's] rights" necessary to support a claim under ERISA).

In order to establish standing under ERISA, a provider cannot rely on vague or generalized allegations of an assignment but must "conclusively establish that [the provider] had obtained a complete assignment of its patients' health insurance benefits."  Franco, 818 F.Supp.2d at 809 (quoting North Jersey Center for Surgery v. Horizon BCBS of New Jersey, 2008 WL 4371754 (D.N.J. Sept. 18, 2008)).

Thus, in Franco, the Court found that conclusory allegations that simply asserted the legal standard -- namely, that there has been an assignment of rights from the patients or that the assignments allowed the provider to "stand in the shoes" of the patient, or other similar language -- without more was insufficient to satisfy the pleading standards of Iqbal and Twombly.  Franco, 818 F.Supp.2d at 811.

As in <u>Demaria</u> and <u>Franco</u>, PCA's allegations fail to support a claim of complete assignment by the Plan Participants. PCA's allegations concerning the scope of the Assignments are entirely conclusory and do not rise above the level of pure speculation. In ¶8 of the complaint, PCA recites the bare legal conclusion that it received the Assignments from the subscribers which transferred their contractual and legal rights under the group health policy issued to PCA. In further conclusory language, PCA alleges that it was "authorized by [____][5] to file claims to the insurance carrier, file suit and enter legal actions as part of the signed Assignment of Benefits." (Compl. ¶8).

Apart from these allegations not making sense, they provide no specific language from the Assignments (the specific contents of which PCA should know) to support the legal conclusions pleaded by it as to the scope of the Assignments. The First Count alleges that the scope of the Assignments includes the right to receive payment directly from NWNA. (Compl. ¶26). As discussed above, the assignment of the right to receive payment is legally insufficient to confer standing on a provider. If this is the extent of the Assignments received by PCA, it does not have standing as the Assignments cannot be construed as assigning the right to enforce B.C., A.R., and K.W.'s rights under the Plan.

---

[5] There is a missing word in this sentence in ¶8 of the complaint which highlights plaintiff's failure to plead any facts concerning the alleged assignment.

Accordingly, its ERISA claims should be dismissed as a matter of law with prejudice.  Demaria at *4.

### B. PCA Has Failed To Plead Sufficient Factual Matter To State A Claim For Relief That Is Plausible On Its Face

PCA has not sufficiently pled that NWNA's alleged benefit determination for B.C., A.R. and K.W. violated ERISA.  Plaintiff alleges that the NWNA Medical Plan provides NWNA with discretionary authority to manage the Plan and to determine a participant's entitlement to benefits.  (Compl. ¶23).  Where the plan administrator is vested with discretionary authority, "a deferential standard of review [is] appropriate," and a federal district court, in reviewing a plan's benefit determination, is limited to determining if the plan administrator abused its discretion.  Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008).  "Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan Administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  (internal quotations omitted).  Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

In the First and Second Counts of the complaint, PCA alleges that NWNA's determinations were "arbitrary and capricious," "in violation of ERISA" and in violation of its fiduciary duty.  (Compl. ¶¶30, 39, 40).  These conclusions do not satisfy PCA's burden of making a threshold showing of evidence in the

complaint that NWNA acted outside the scope of its decision making authority provided by the Plan or that its determinations were arbitrary or capricious.  See Advanced Rehabilitation v. United Healthcare, 2011 U.S. Dist. LEXIS 27710, *8 (D.N.J. Mar. 17, 2011), aff'd. 2012 U.S. App. LEXIS 20050 (3d Cir. Sept. 25, 2012).  The court is not required to and should not credit bald assertions or legal conclusions.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1429.  As these allegations do not contain "sufficient factual matter" to "state a claim for relief that is plausible on its face," the First and Second Counts should be dismissed.  Iqbal, 556 U.S. at 678.

## POINT II

### PCA'S STATE LAW CLAIM FOR NEGLIGENT MISREPRESENTATION (THIRD COUNT) IS PREEMPTED AND MUST BE DISMISSED

In the Third Count, PCA asserts a New Jersey common law claim of negligent misrepresentation.  PCA seeks the same relief sought in Count One, payment of the reasonable and customary fees payable to an out of network provider under the NWNA Medical Plan.  Given ERISA's broad preemption of state law causes of action, the Third Count is preempted and must be dismissed.

ERISA contains two relevant statutory provisions that preempt state law causes of action.  The first provision, Section 502(a) of ERISA, 29 U.S.C. §1132(a), sets forth a comprehensive civil enforcement scheme which forecloses

state law claims that seek to supplement or supplant its remedies.  For this reason, any claim that falls within the scope of Section 502(a) is completely preempted. Pryzbowski v. U.S. Healthcare, 245 F.3d 266, 271-72 (3d Cir. 2001).

In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987), the Supreme Court explained:  "[T]he detailed provisions of §502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

The Supreme Court held that "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Aetna Health Ins. v. Davila, 542 U.S. 200, 208 (2004).  See, Pilot Life Ins. Co., 481 U.S. at 47-48 (the ERISA preemption clause, 29 U.S.C. §1144(a), encompasses not only state laws, but also "common law causes of action.").

Here, PCA's common law cause of action for negligent

misrepresentation is based on the allegation that NWNA failed to pay PCA in accordance with a representation that the Plan would pay reasonable and customary fees for services rendered by an out-of-network provider.  Because this common law cause of action seeks to recover benefits allegedly due pursuant to an ERISA-governed plan, it "duplicates, supplements, or supplants the ERISA civil enforcement remedy" provided by §502(a) and is therefore preempted.  Davila, 542 U.S. at 209.

Section 514(a) of ERISA, 29 U.S.C. §1144(a), expressly preempts any state law that relates to an employee benefit plan.  "29 U.S.C. §1144 provides that 'the provisions of this subchapter … shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan….' 29 U.S.C. §1144(a).  ERISA's preemption provision is 'deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern.' Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S. Ct. 1549, 95 L. Ed. 2d. 39 (1987).  'As such, a cause of action asserted under state law is pre-empted if it can be said to "relate to" an employee benefits plan.' Bicknell v. Lockhead Martin Grp. Benefits Plan, 410 Fed. Appx. 570, 576 (3d Cir. 2011) (citing Pilot Life Ins. Co., 481 U.S. at 47, 107 S. Ct. 1549)." Aarom v. Bd. Of Trustees of the Pepco Holdings, Inc. Retirement Plan, 814 F.Supp. 2d 466, 474 (D.N.J. 2011).

Here, PCA's state law claim is based on NWNA's failure to pay PCA

the benefits it alleges are due B.C., A.R., and K.W. under the NWNA Medical
Plan, specifically, NWNA's refusal to make payment in accordance with the
reasonable and customary rates for the services performed by PCA. (Compl. ¶¶29,
42). Because PCA's state law claim is based on the alleged underpayment of
benefits allegedly due under the Plan, it involves the administration of benefits and
relates to the Plan. Courts have repeatedly held that 29 U.S.C. §1144(a) preempts
state law claims that an insurer misrepresented the amount or availability of
benefits under an employee benefit plan. See, e.g., Id.; Kelso v. General American
Life Ins. Co., 967 F.2d 388, 390-91 (10th Cir. 1992). Any claim that "challenges
the administration of or eligibility for benefits" is completely preempted and must
be dismissed. Pryzbowski, 425 F.3d at 273. This state law claim clearly "relates
to" an ERISA-governed plan and is therefore, preempted. See Pilot Life Insurance
Company, 481 U.S. at 48 ("The common law causes of action … based on alleged
improper processing of a claim for benefits under an employee benefit plan,
undoubtedly met the criteria for pre-emption under §514(a)."). The Third Count
should be dismissed with prejudice.

## POINT III

## THE COURT SHOULD DISMISS THE SECOND COUNT FOR FAILURE TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

### A. The Complaint Does Not Set Forth The Elements Of A Breach Of Fiduciary Duty Claim

The Second Count, styled "ERISA-Breach of Fiduciary Duty," alleges that NWNA violated its fiduciary duty under ERISA to B.C., A.R. and K.W.  A claim for breach of fiduciary duty under ERISA requires proof that "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure."  Shook v. Avaya, Inc., 625 F.3d 69, 73 (3d Cir. 2010) (internal quotation and citation omitted).

Other than alleging that NWNA was a fiduciary under ERISA (Compl. ¶38), PCA does not plead any facts to support elements (2), (3) and (4) (referred to above) of a breach of fiduciary duty claim.  PCA does not even plead any conclusions which would track the required elements of a breach of fiduciary duty claim.  Count Two of the complaint alleges in conclusory fashion that NWNA's "determination of B.C., A.R. and K.W.'s claims without any (or even substantial) explanation was arbitrary and capricious as well as being in violation

of ERISA." (Compl. ¶39). PCA does not allege that NWNA made any material affirmative misrepresentation to B.C., A.R. and K.W., or failed to adequately inform them of any material fact; and that B.C., A.R. and K.W. relied on the unidentified, inadequate disclosure to their detriment.

**B.   Plaintiff Does Not Plead Sufficient Facts To Meet The Requirements of Fed. R. Civ. P. 8(a)**

The Second Count does not set forth a single fact to support the totally conclusory allegation that NWNA's determination of B.C., A.R. and K.W.'s claims was arbitrary and capricious. (Compl. ¶39). The complaint does not describe the type of services provided by PCA for which claims were submitted to the Plan; does not describe the claims; does not describe NWNA's determinations; and does not set forth a single fact as to how NWNA's determinations were arbitrary and capricious. The complaint does not plead any facts which would present a plausible claim for breach of fiduciary duty. As with the other claims asserted in the complaint, PCA pleads only conclusions leaving the Court to speculate as to its entitlement to any relief.

Failing to plead facts supporting the required elements of an ERISA breach of fiduciary duty claim should result in the dismissal of the Second Count for failure to state a claim upon which relief can be granted.

**C.   ERISA Does Not Provide A Monetary Remedy For Procedural Violations**

The Second Count should be dismissed for the separate and independent reason that ERISA does not provide monetary remedies for the

procedural wrongs alleged by PCA.  PCA seeks only monetary relief for its claim that NWNA did not provide an explanation of its determination of benefits.

It is a "general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." Ashenbaugh v. Crucible 1975 Salaried Ret. P., 854 F.2d 1516, 1532 (3d Cir. 1988) (citing Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir. 1983), and Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 328-29 (2d Cir. 1985)).  The only "remedy" available for an ERISA procedural violation is found in §503's "full and fair review" provision.  The statutory remedy where a violation of that provision is found is to remand the claim to the plan administrator.  See, e.g., Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000) (declaring that "the remedy for a violation of §503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review"); Flinders v. Workforce Stabilization Plan of Phillip Petroleum Co., 491 F.3d 1180, 1194 (10th Cir. 2007), abrogated in part on other grounds by Metro Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008)("If the plan administrator … failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation.").

PCA does not seek a remand or any other equitable relief in the Second Count.  Because PCA does not request the only relief that is available for

the procedural violation it alleges, that count should be dismissed for failure to state a claim.

## POINT IV

### BECAUSE PCA HAS FAILED TO SUFFICIENTLY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES, ALL ERISA COUNTS SHOULD BE DISMISSED

#### A. Exhaustion Is A Requirement For PCA's ERISA Claims

PCA, or its assignor participants, is required to have exhausted administrative remedies before any judicial action may be commenced seeking benefits. "[A] federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (citing Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984)). This "exhaustion requirement is strictly enforced[.]" Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990). See also, D'Amico v. CBS Corp., 297 F.2d 287, 291 (3d Cir. 2002) (exhaustion of administrative remedies is required before commencing a lawsuit asserting "claims to enforce the terms of a benefit plan" under ERISA); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)(before bringing a claim under ERISA, a plaintiff must exhaust all administrative remedies); Chapman v. Choice Care Long Island Disability Plan, 288 F.3d 506, 514 (2d Cir. 2002)(a claimant must pursue all administrative remedies provided by their plan, which includes carrier review in the event benefits are denied).

Under ERISA, the exhaustion requirement is "an important legal rule" that "promote[s] the consistent treatment of claims for benefits," "minimize[s] the costs of claims settlement for all concerned,'" and has the salutary effect of "refining and defining the problem" for final judicial resolution.  Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 278-79 (3d Cir. 2007).

NWNA's Plan contains provisions for at least two levels of administrative appeal, through which a participant may seek review of his or her benefits determination.[6]  See Declaration Dana Loch.  For post-service claims such as PCA's claims, the Plan provides at least two levels of internal appeals as well as a third level external review program for certain types of claims, and provides that a participant cannot bring a legal action against NWNA "for any reason unless you first complete all steps in the appeal process described in this section."  Id.  (Exhs. "A" at p. 70 and "C" at p. 74).

PCA does not allege that it has "exhausted" any specific appeal procedure for each of the three participants.  Instead, attempting to avoid this

_____

[6] Because the complaint makes multiple references to and relies upon NWNA's Medical Plan [see Compl. ¶¶ 1, 4, 8, 9, 17, 22, 23, 24, 26, 28, 29], NWNA is permitted to present relevant provisions of its Medical Plan without converting its motion to dismiss into a motion for summary judgment.  See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Annexed to the Declaration of Dana Loch as Exhibits A-D are the administrative appeals provisions included in the Summary Plan Description of NWNA's Medical Plans which the Court may rely upon.  See Synder v. Farnam Companies, Inc., 792 F.Supp.2d 712, 717 (D.N.J. 2011) (Martini, J.)

-22-

mandatory legal and Plan requirement to bring a lawsuit, PCA makes a single vague and conclusory allegation that it submitted "appeals for reconsideration of the claim, and for further payment." (Compl. ¶17).  PCA references only a single claim, does not identify for which claim the appeals were submitted (B.C., A.R., or K.W.), and does not set forth any facts for this Court to conclude that it pursued and completed the administrative reviews in accordance with the provisions of the NWNA Medical Plan.

The First and Second Counts should be dismissed.

## POINT V

### PCA'S CLAIM FOR NEGLIGENT MISREPRESENTATION (THIRD COUNT) FAILS TO STATE A CLAIM BY REASON OF THE ECONOMIC LOSS DOCTRINE

PCA's negligent misrepresentation claim arising out of an alleged agreement with NWNA, is not recoverable in tort.  The economic loss doctrine provides that a tort remedy does not arise from a contractual relationship, Shinn v. Champion Mortgage Co., Inc., 2010 WL 500410, at *4 (D.N.J. 2010) (Martini, J.) including claims of negligent misrepresentation.  Ctr. for Special Procedures v. Conn General Life Ins. Co., 2010 U.S. Dist. LEXIS 128289 (D.N.J.) (Cooper, J.), at *20-22 (dismissing plaintiff non-participating provider's negligent misrepresentation claim against defendant insurance company, where plaintiff also alleged breach of contract, finding that "this was not the type of case in which a

claim for negligent misrepresentation is appropriate [ ] [because] … the contractual relationship at issue forecloses plaintiff's tort claim"); CJS Corporate Center, LLC v. Merrill Lynch Mortg. Lending, Inc., 2010 WL 3075694, at *9 (App. Div. 2010) ("CJS cannot bring a claim for negligent misrepresentation because 'a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.' Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316, 788 A.2d 268 (2002)").  Because there is no duty of care separate and apart from the alleged contractual relationships between PCA and NWNA the Court should dismiss the negligent misrepresentation claim as a matter of law.

## POINT VI

### THE FOURTH COUNT AGAINST FICTITIOUS CORPORATIONS SHOULD BE DISMISSED

The Fourth Count alleges that unidentified and fictitious corporations, the "ABC Corporations," are "responsible for the payments of Plaintiff's reasonable and customary fees." (Compl. ¶47).  PCA does not plead any wrongful conduct nor allege the basis for a fictitious corporation to be legally responsible for payments to PCA.  PCA does not plead "sufficient factual matter" to "state a claim for relief that is plausible on its face" and the Fourth Count should be dismissed. Iqbal, 556 U.S. at 678.  In addition, the Fourth Count should be dismissed for the same reasons that support the dismissal of the First through Third Counts of the complaint.

## POINT VII

## PCA'S JURY DEMAND SHOULD BE STRICKEN

PCA's jury demand should be stricken because it is not entitled to a jury trial on its ERISA claims.  A district court may strike a jury demand on an objecting party's motion or on its own motion if it finds that a right to a jury trial on an issue does not exist under the U.S. Constitution (suits at common law) or a federal statute.  See Fed. R. Civ. P. 39(a)(2).

The ERISA statute does not provide for a jury trial.  In the Third Circuit there is no right to a jury trial in an action brought to recover benefits under ERISA.  Pane v. RCA Corporation, 868 F.2d 631, 636 (3rd Cir. 1989) (action for benefits under §502(a)(1)(B) is equitable in nature so that no right to jury trial was available); Cox v. Keystone Carbon Co., 894 F.2d 647 (3d Cir. 1988) (there is no right to a jury trial in an action to recover benefits under ERISA §502(a)(1)(B)); Turner v. CF&I Steel Corp., 770 F.2d 43 (3rd Cir. 1985) (no jury trial on ERISA claim for benefits); Killian v. Johnson & Johnson, No. 07-4902, 2008 WL 320533 at *3 (D.N.J. Jan. 29, 2008).

Because PCA's claims in this action are to recover benefits under the Plan, its jury demand should be stricken pursuant to Fed. R. Civ. P. 39(a)(2).

## **CONCLUSION**

For the foregoing reasons, defendant Nestlé Waters North America

Inc. respectfully requests that the Complaint be dismissed with prejudice.

Dated:  April 2, 2013                   Respectfully submitted,
Roseland, New Jersey

                                        ORLOFF, LOWENBACH, STIFELMAN
                                        & SIEGEL, P.A.

                                        By:   /s/ Jeffrey M. Garrod
                                            JEFFREY M. GARROD
                                            Attorneys for Defendant
                                            Nestlé Waters North America Inc.
                                            101 Eisenhower Parkway - Suite 400
                                            Roseland, New Jersey  07068
                                            (973-622-6200)

# EXHIBIT  A

**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MONTVALE SURGICAL CENTER, LLC, a/s/o GERALD TYSKA | ) ) ) ) | Civil Action No. 12-6916 |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION** |
| COVENTRY HEALTH CARE, AMICA MUTUAL INSURANCE COMPANY, AND ABC CORP (1-10), | ) ) ) ) | |
| Defendants. | ) ) | |

    This matter comes before the Court by way of Defendants Coventry Health Care, Inc. ("Coventry") and Amica Mutual Insurance Company's ("Amica") (collectively, "Defendants") Joint Motion to Dismiss Plaintiff Montvale Surgical Center, LLC's ("Plaintiff" or Montvale") Complaint. CM/ECF No. 11. The Court has considered the submissions made in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is granted.

**I.    BACKGROUND**[1]

    Plaintiff is an outpatient ambulatory surgery center where minimally invasive pain management and podiatry procedures are performed. Compl. at ¶ 1. In March 2009, New Jersey resident Gerald Tyska ("Tyska") underwent what Plaintiff describes as "medically necessary"

---

[1] For purposes of the current motion, the Court accepts as true each of the facts set forth in Plaintiff's complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

spinal manipulation under anesthesia ("MUA") procedures at Plaintiff's facility.  Compl. at ¶¶ 9, 12-14.  Plaintiff explains that Tyska subscribes to a fully-funded group health insurance plan maintained by Coventry, and presumably Amica,[2] and assigned Plaintiff his contractual rights under these plans.  Compl. at ¶¶ 2, 7.

Tyska underwent a total of three MUA procedures and Plaintiff submitted requests for reimbursement to Defendants for each of these procedures.  Compl. at ¶¶ 12-14.  Defendants denied each of these requests after allegedly finding the "MUA treatment administered to Tyska to be experimental and investigational, as well as not the national standard of care for the diagnosis given."  Compl. at ¶¶ 12-15.  Plaintiff appealed this decision and alleges that Defendants failed to provide a "timely" and "appropriate response to the appeal."  Compl. at ¶ 15.

On October 4, 2012, Plaintiff filed the present action against Defendants in the Superior Court of New Jersey, Bergen County: Law Division.  CM/ECF No. 1.  Plaintiff's Complaint consisted of Five Counts—two counts alleging that Defendants violated ERISA, two counts alleging that Defendants breached a contract with Plaintiff, and one count[3] against fictitious corporate defendants.  Compl. at ¶¶ 20, 38-39, 42, 46.  This action was subsequently removed to this Court, and Defendants filed the present Motion to Dismiss on February 15, 2013.  CM/ECF No. 11.

_____

[2] Plaintiff states that Tyska is a "subscriber to a fully funded plan of group health insurance maintained by Defendant Coventry Health Care" but does not explain Tyska's relationship with Amica.  Compl. at ¶ 2.  To the extent Plaintiff wishes to file an amended complaint, Plaintiff is instructed to clearly identify Tyska's relationship with each defendant.

[3] Plaintiff argues that these fictitious corporate defendants were "responsible for payments of Plaintiff's reasonable and customary fees."  Compl. at ¶ 49.  Plaintiff does not identify any allegedly wrongful conduct nor does Plaintiff set forth "sufficient factual matter" to "state a claim for relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, Count Five cannot survive Defendants' Motion to Dismiss.  *See id.*

2

## II.   LEGAL STANDARDS

### A.   Motions to Dismiss

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips*, 515 F.3d at 231 (citing *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will only survive a motion to dismiss if it contains "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.   Standard of Review Under ERISA

An ERISA benefits denial is reviewed using a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the administrator is vested with discretionary authority, "a deferential standard of review [is] appropriate;" and a reviewing court is limited to determining whether the administrator abused its discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111

3

(2008) (quoting *Firestone*, 489 U.S. at 115). However, where there is evidence of conflict or

bias by the administrator, such evidence may play an important role in determining whether the

administrator abused its discretion. *Metro. Life Ins. Co.*, 554 U.S. at 111. In the Third Circuit,

"[u]nder the arbitrary and capricious (or abuse of discretion) standard of review, the district court

may overturn a decision of the Plan administrator only if it is without reason, unsupported by

substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffmann-La Roche, Inc.*, 2

F.3d 40, 45 (3d Cir. 1993 (internal quotations omitted). If the plan language is plain, then

"actions taken by the plan administrator inconsistent with [those] terms . . . are arbitrary." *Bill*

*Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001).

## III.   ANALYSIS

### A.   Counts One and Two – ERISA

In Counts One and Two of Plaintiff's Complaint, Plaintiff claims that Defendants[4]

arbitrarily and capriciously denied Tyska's claim for reimbursement in violation of ERISA.

Compl. at ¶¶ 29, 38-39. Specifically, in Count One, Plaintiff alleges that the "denial of Tyska's

claims is unsupported by substantial evidence, erroneous as a matter of law, not made in good

faith, is arbitrary and capricious and is a violation of ERISA." Compl. at ¶ 29. In Count Two,

Plaintiff alleges that Defendants' "determinations of all claims without any (or even substantial)

explanation were arbitrary and capricious" and a violation of Defendants' "fiduciary duty" under

ERISA. *See* Compl. at ¶¶ 38-39. Defendants move to dismiss both of these counts arguing that

---

[4] In Defendant's Joint motion to Dismiss, Defendants argue that "Montvale does not attempt to differentiate these two Defendants." Defs. Br. at 2. The Court agrees. In Counts One and Two, Plaintiff attributes "all actions generally to either 'Coventry/Amica' or 'Defendant Coventry/Amica.'" *See* Defs. Br. at 2; *see also* Compl. at ¶¶ 21-28, 34-39. To the extent Plaintiff chooses to file an Amended Complaint, it is hereby instructed to differentiate between each individual defendant so that "each individual defendant can fairly respond to the allegations made." *See* Defs. Br. at 2.

"Plaintiff has not sufficiently pleaded that Defendants' alleged benefit determination violated ERISA." Defs. Br. at 2. The Court agrees.

Plaintiff does not dispute the essential terms of Tyska's benefits plan[5]—Defendants have fiduciary discretion to determine whether an "administered treatment is medically necessary" and to deny benefits for investigative or experimental procedures. *See* Compl. at ¶¶ 15, 22. Instead, Plaintiff argues that Tyska's MUA procedures were clearly covered under the terms of this plan and that Defendants abused their discretion in denying coverage. *See* Compl. at ¶¶ 15-16. In support of these allegations, Plaintiff asserts that, 1) there "exist AMA-CPT codes that indicate that MUA is not investigational or experimental, as well as nationally accepted criteria for practicing MUA on selected patients," and 2) Tyska's MUA procedures were "medically necessary." *See* Compl. at ¶¶ 9, 15. However, neither statement, alone or in concert, contains "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

First, in *Advanced Rehabilitation*, the Court considered a nearly identical argument that a denial of reimbursement for an MUA procedure was improper in light of AMA-CPT codes and found such an argument insufficient to withstand a motion to dismiss.[6] *See Advanced Rehabilitation v. UnitedHealth Group*, No. 10-00263, 2011 U.S. Dist. LEXIS 27710, *7 (D.N.J. Mar. 17, 2011) ("*Advanced Rehabilitation*"). In granting that motion to dismiss, the Court relied

---

[5] Plaintiff argues that Defendants "should be required to produce their Plan, the medical documentation upon which they rely and denials of reimbursement with the basis for the same." Pl. Br. at 8. However, even assuming that the Court was permitted to request such documentation, it is not necessary in this case. Plaintiff does not dispute the essential terms of the insurance contract, and, as discussed, the Court accepts as true Plaintiff's assertion that Defendants systematically denied reimbursement claims for MUA procedures. *See generally* Compl. at ¶¶ 15, 38.

[6] Plaintiff relies on the existence of these "AMA-CPT" codes to argue that the "medical community, including the American Medical Association, determined that the MUA procedures are accepted and non-experimental." *See* Pl. Br. at 2 (citing Compl. at ¶ 15).

5

on the explicit language of the CPT book that:

> Inclusion in the CPT codebook does not represent endorsement by the American Medical Association (AMA) of any particular diagnostic or therapeutic procedure.  Inclusion or exclusion of a procedure does not imply any health insurance coverage or reimbursement policy.

*Id.*  In light of this language, the Court held that the "CPT codes on which Plaintiffs rely to prove that, objectively, the MUA procedure is medically necessary and not experimental or investigative is not availing, and is refuted by the language of the CPT code book itself[.]"  *Id.* at 9.  Here, Plaintiff does not present a single persuasive argument why the Court should depart from this holding.[7]

Second, in its opinion affirming *Advanced Rehabilitation*, the Third Circuit addressed the sufficiency of Plaintiff's second argument.  *See Advanced Rehabilitation v. UnitedHealthcare*, No. 11-4269, 2012 U.S. App. LEXIS 20050, fn. 3 (3d Cir. Sept. 25, 2012).  In so doing, the Third Circuit concluded that, "even if [those] Plaintiffs had asserted that MUA procedures were 'medically necessary,' that would have been insufficient because, whether express or implied, conclusory allegations without more cannot unlock the doors of discovery."  *Id.* (quotations omitted).  The Third Circuit's opinion is unpublished and not precedential, but the Court finds the Third Circuit's analysis persuasive.  There, like here, Plaintiff's assertion that the MUA procedures were "medically necessary" was conclusory and not supported by any evidence in the pleadings.  *See Advanced Rehabilitation*, 2012 U.S. App. LEXIS 20050 at fn. 3 (quotations and citations omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429 (stating that courts are not required to credit bald assertions or legal conclusions).  Accordingly, neither

---

[7] Plaintiff argues that this case is distinguishable from *Advanced Medicine* because "Plaintiff has not been afforded any opportunity to review the Coventry/Amica plan or the administrative record in this case."  Pl. Br. at 7.  Plaintiff cannot, however, point to one important distinction between this case and *Advanced Medicine*, and, as discussed above, there is no reason for the production of documents at this stage.  *See* Pl. Br. at 6-8.

of Plaintiff's assertions is sufficient for its Complaint to withstand a motion to dismiss.  *See id.*

In Plaintiff's Opposition, Plaintiff now also alleges that Defendants had "preordained that [they would] deny coverage for" MUA procedures.  Pl. Br. at 2.  This argument is noticeably absent from the Complaint; however, even if it were included, Plaintiff's Complaint would still fail.  *See generally* Compl. at ¶¶ 8-32.  The Court addressed a similar argument in *Advanced Rehabilitation* and held that, accepting as true plaintiff's "allegations that denial of coverage for MUA procedures is systemic," plaintiff still had not met its "threshold showing that [d]efendants acted outside the scope of decision making that they were, by the terms of the plans, entitled to, or that their determinations were arbitrary or capricious."  *See Advanced Rehabilitation*, 2011 U.S. Dist. LEXIS 27710 at *8.  Here, Plaintiff again fails to present a persuasive argument why the Court should depart from this opinion.[8]  Accordingly, Defendants' Joint Motion to Dismiss Counts One and Two of the Complaint is granted.  Counts One and Two of the Complaint are dismissed without prejudice.

**B.      Counts Three and Four – Breach of Contract**

In Counts Three and Four, Plaintiff claims that Coventry and Amica breached their contracts with Plaintiff.  *See* Compl. at ¶¶ 42, 46.  Specifically, Plaintiff argues that Defendants breached a contract by "failing to pay the reasonable and customary rate for services rendered under the terms of the policy and by failing to properly respond to the appeal."  *See* Compl. at ¶¶ 42, 46.  Defendants move to dismiss each of these counts arguing that Plaintiff's "state law breach of contract claims arising from the alleged denial of benefits fail as a matter of law because they are preempted by ERISA."  Defs. Br. at 6.  In Plaintiff's Opposition, Plaintiff does

---

[8] Plaintiff relies on a footnote in *Devito v. Aetna* in support of its argument.  *See* Pl. Br. at 7 (citing *Devito v. Aetna*, 536 F. Supp. 2d 523, 532, n. 7 (D.N.J. 2008)).  However, the facts of the present action are more in line with those in the Court's more recent holding in *Advanced Rehabilitation*.  *See Advanced Rehabilitation*, 2011 U.S. Dist. LEXIS 27710 at *8.

not respond to Defendants' preemption arguments or provide any other arguments in effort to save its breach of contract claims. *See generally* Pl. Br. at 2-9.

Even if Plaintiff had attempted to rebut this argument, its endeavors would fail. Section 514(a) of ERISA, 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a)." 29 U.S.C. § 1144(a). This preemption clause is not limited to "state laws specifically designed to affect employee benefit plans" but also encompasses "common law causes of action" related to said plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) (quotations and citations omitted). Here, Counts Three and Four assert claims for breach of Tyska's employee benefits plan and are therefore preempted. *See* Compl. at ¶¶ 42, 46; *see also Pilot Life Ins.*, 481 U.S. at 47-48. Accordingly, Counts Three and Four are dismissed with prejudice.[9] *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (stating that a complaint will only survive a motion to dismiss if it contains "sufficient factual matter" to "state a claim to relief that is plausible on its face.").

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted and Plaintiff's Complaint is dismissed in its entirety. An appropriate Order accompanies this Opinion.

DATED: March 18 2013

Jose L. Linares
United States District Judge

---

[9] In light of this finding, the Court need not address Defendants' argument that "Section 502(a) of ERISA completely preempts Montvale's state law claims against Defendants because it improperly seeks to duplicate and supplement the exclusive remedies available under ERISA."

8